**ISUMU for himself and on behalf of his children, Plaintiffs**

**v.**

**PALAIA and FELENI MULIPOLA and Family, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 10-89

September 12, 1989

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: For Plaintiffs, Utu Sinagege R.M.
For Defendants, Gata E. Gurr

Plaintiff seeks the eviction of defendants from his land.

*Factual Background*

In 1972 plaintiff, Isumu Leapaga, secured in "[himself] & [his] children," registration of title in individual ownership to a certain acreage of land known as "Leatuvai" located in Tafuna. Shortly thereafter, he gave defendants, Palaia and Feleni Mulipola, permission to build themselves a dwelling on a portion of the said land. In 1973 he executed defendants' building permit application and in 1977 executed a separation agreement with defendants which is recorded with the office of the Territorial Registrar. The parties are not related; however, the defendants were related to plaintiff's then wife, Mao, and under those circumstances plaintiff gave his permission. Defendants did indeed act on the permission and after clearing the site designated, they built a fale papalagi (European type structure). For many years, the parties lived harmoniously together with defendants rendering certain tautua (traditional services) to plaintiff.

In 1987, however, Mrs. Mao Leapaga passed away and subsequently plaintiff remarried. The defendant Palaia testified that not long thereafter his family was soon made to realize that Mao's death had also served to terminate whatever ties plaintiff had to them. The new Mrs. Leapaga immediately began to assert her presence and standing by involving herself in a lot of petty quarrels with members of defendants' family telling them what they could and could not do on the land. (It seems clear that the defendants must have represented to the new Mrs. Leapaga the remaining vestige of her predecessor's influence. They had to go.)

Defendants confronted plaintiff about his new wife's interference with their accustomed use of the land. However, they were met with the response that Mao's era had ended and that the times had changed. Mr. Leapaga's position was that the defendants were brought on the land by his late wife and that with her death there was no further reason for defendants to remain on the land. (He took the apparent view that Mao's death not only ended their marriage but also ended any further alliance between he and his kin on the one hand, and Mao's surviving kin on the

99

other.)[1] Mr. Leapaga also testified that defendants were becoming troublesome on the land and claimed that their tautua was ineffective,

Despite plaintiff's repeated directives to defendants to move out, they refused to budge. Their recent thinking being that they had poured their lives and sweat into their homesite and that therefore as far as they were concerned they were entitled to live on the land forever. Defendant Palaia Mulipola testified that when they first moved onto the land, the area was isolated bush and rocky in terrain. To clear the area in order to obtain a homesite, as well as an access to that site, Mulipola claimed that it took many months of burning large trees together with the assistance of a bulldozer. He further testified that he had, at the outset, $8,000 in savings which was all expended in clearing the land and constructing their home, which for a time remained incomplete. He testified that he obtained a further $5000 in the way of a loan and finally completed their home.

Defendants deny being problematic on the land and further deny that their tautua has lately been ineffective. Plaintiff was in fact refusing to accept any further service from them.

### Discussion

The first observation which can be made on the facts is that the defendants' permissive occupation of plaintiff's property has not amounted to any sort of legal interest in the land whereby the defendants can maintain the claim that the land is theirs to live on forever. In similar cases involving a falling out between a property owner and his permittee, the Court analyzed the parties' rights in terms of the common law concept of "license." *See Tago v. Leota*, 4 A.S.R. 341 (1963), *Lutu v. Petelo*, 3 A.S.R. 252 (1956), *Lutu v. Ponali*, 2 A.S.R. 503 (1949), *Tago v. Sami*, 2 A.S.R. 285 (1947).

In earlier times, the Court had little difficulty with applying the general proposition that a parol license without consideration was revocable at will, notwithstanding improvements made on the land by the licensee. With the relatively simpler life style of the day, there was very

---

[1] *Cf. Tuiteleleapaga v. King*, 8 A.S.R.2d 49 (1988) (a widow who has no children by her deceased husband has no right to remain on the communal land of husband's family unless the family invites her to remain).

100

little hardship involved with a licensee who was required to pack up and relocate his family, fale, and crops within a reasonable period of time.[2]

In other circumstances, however, it was also realized that a licensee could not simply be ordered to relocate without his suffering significant hardship. In some cases, therefore, the Court, while acknowledging the licensor's right to revoke a license, allowed the licensee to recoup his expenditures made in pursuance of the license.[3] Yet again in other cases, the Court has also held on equitable principles --- in circumstances where a licensee's reliance has proved to be particularly substantial or costly --- that the license became "irrevocable" and therefore the licensee could continue possession for the intended duration of the license. *Foster v. Olotoa*, 3 A.S.R. 76 (1953), *Lutu v. Ponali*, 2 A.S.R. 503 (1949), *Tago v. Sami*, 2 A.S.R. 285 (1947). However, even an irrevocable license does not create an interest or property in land. *Talo v. Tavai*, 2 A.S.R. 63 (1939). A license is personal and non-assignable and therefore will ordinarily expire at the death of the licensor or the licensee, unless in the case of the licensor's death, the license is extended by the licensor's heirs. *Tuileata v. Talivaa*, 3 A.S.R. 201 (1956).

## Conclusions

1. We conclude on the evidence that plaintiff, Isumu Leapaga, had in 1973 given a parol license to defendants, Palaia and Feleni Mulipola, to construct a home on and to occupy, for residential purposes, a portion of his land "Leatuvai" subject to a requirement of tautua.

---

[2] For example, in *Talo v. Tavai*, 2 A.S.R. 63 (1939) the Court explained, "[t]o hold [a license] irrevocable would be to convert [it] into an interest or property in land." *Id.* at 71. On the other hand, "[t]he fales and the cook house, although attached to the soil can be taken down and rebuilt elsewhere. The soil and climatic conditions in American Samoa are such that the pineapple plantation on the land can be removed plant by plant to other land without loss of the plants. The same is true of the giant taro and yam plantations put in by Talo, except insofar as some of the taro and yams may have matured. Such matured plants can be dug up and used, or sold." *Id.* at 72.

[3] In *Faiivae v. Tiumalu*, 3 A.S.R. 402 (1959), the Court held that a licensee who made extensive repairs and substantial improvements to a building was entitled to continued possession of the licensed premises, in accordance with the terms of the license, until such time as the value of his use of the premises was equivalent to the value of his expenditures. *See also Magalei v. Tago*, 3 A.S.R. 185 (1955) (retention of possession of premises until value of use is equivalent to value of licensee's expenditures on improvements less salvage value of any building removed by the licensee).

2. On the evidence we are satisfied that defendants have not been troublesome nor rendered tautua ineffectively. We accordingly conclude that defendants have not acted inconsistently with the terms of the license given them.

3. We conclude that, with the substantial and costly improvements made to plaintiff's land by the defendants in the way of clearing the bush and erecting a papalagi style home thereon pursuant to the terms of the license, the license may not be revoked by plaintiff at will.

4. We are also satisfied on the evidence that at the time the license was created neither party gave thought to a termination date as coinciding with the death of Mrs. Mao Leapaga. Additionally, we cannot say that because of Samoan custom an inference reasonably follows that the parties (at the time the license was created) contemplated Mao's death as the termination date of the license.[4]

5. We conclude that the license in its normal course is terminable upon the death of either the plaintiff or defendant unless in the case of plaintiff's sooner demise, his heirs extend the term of the license.

6. We conclude that the terms of the license must be complied with exactly by defendants --- see *Lutu v. Ponali*, 2 A.S.R. 503 (1949), and that the defendants may continue to have possession of the licensed premises accordingly unless the license is sooner terminated by agreement or otherwise by law.

Judgment will enter accordingly. It is so Ordered.

---

[4] Such an inference must presuppose at the outset: that Isumu and Mao could not possibly have had, or adopted, issue which would supply a bond among kin that would nave survived Mao's death; and, secondly, that Mao could not have possibly survived Isumu (whose death would, as a matter of law, terminate the license).